This case is one calling for the exercise of our original jurisdiction. It presents the question whether Thomas V. Craven, a member of the New Orleans bar, should be disbarred by the striking of his name from the roll of attorneys, authorized to practice law before the courts of this state. The same cause of action was before us on exceptions on two prior occasions. In re Craven, 169 La. 555, 125 So. 591; In the Matter of Craven, decided December 1, 1930.
The petition for disbarment was filed by the disbarment committee, appointed under rule 20 of this court. It charges that Craven, who was admitted to the bar on June 8, 1916, has demeaned himself, since his admission, in a manner inconsistent with the oath, taken by him as an attorney and counsellor at law, in that he has been guilty of gross professional misconduct.
This misconduct, it is alleged, consists in Craven's having obtained from Lloyd Thompson the sum of $50 by forging a certificate of nolle prosequi, on March 16, 1928, on a copy of a bill of information, charging Thompson with assault with intent to rape. To accomplish this nefarious and fraudulent act, it is charged that Craven procured a copy of the bill of information, duly certified by a deputy clerk of the criminal district court for the parish of Orleans, where the charge of assault with intent to rape was pending against Thompson. Having procured this certified copy, it is charged that Craven indorsed, in typewriting, on the reverse of the copy so obtained, after the deputy clerk had delivered the copy to him, the following, to wit: *Page 380 
"Nolle prossed, March 16, 1928, Warren Coleman, Assistant District Attorney," and that Craven then delivered the certified copy, with the forged nolle prosequi entry to Thompson, and received $50 for having obtained the nolle prosequi.
An answer was filed, and then the court appointed a commissioner to hear the evidence and make a report to it of his findings of fact and conclusions of law. These things the commissioner faithfully did. He found that the charge preferred by the disbarment committee against Craven was well founded, and recommended that Craven be disbarred. Craven, through the curator ad hoc appointed to represent him, excepted to these findings and recommendation, upon the ground that the evidence adduced does not justify the finding that the charge preferred by the committee has been established.
The record leaves no doubt, and it is apparently conceded arguendo, that, as appears from the evidence of two deputy clerks, Craven, on March 16, 1928, applied to the docket deputy for a certified copy of the bill of information against Thompson, charging him with an assault with intent to rape; that the clerk replied substantially that he was occupied then, but would give him a copy in a short while; that Craven replied substantially that, if given the original bill, he would make the copy, and that then the record deputy, by comparing the copy with the original, could test the correctness of the copy; that thereupon the deputy gave the original to Craven; that Craven then went into the clerk's private office, where apparently he was alone, and where, after he had entered the office, the deputies heard a *Page 381 
typewriter in operation; that Craven remained in the private office a sufficient length of time to have made the copy, and then returned to the deputy and handed him the original bill and the copy that he had made.
The copy that Craven delivered to the deputy did not have in it the forged entry of the nolle prosequi. The copy was compared with the original by two deputies and found to be correct. It was then, without the typewritten entry of the nolle prosequi, delivered by one of the deputies to Craven. On the day following its delivery to Craven, Thompson showed the certified copy to Coleman, and said that he wished to know whether everything was in proper shape, as he expected to leave the state the next day, and did not want to be in the attitude of having forfeited his bond.
At the time the assistant district attorney saw the certified copy, the nolle prosequi entry (typewritten, as was the rest of the copy, including the assistant district attorney's signature to the nolle prosequi entry) appeared in the copy as an indorsement thereon. On or about that day Craven left the state and has not been heard from since.
The only evidence that the disbarment committee has connecting Craven with the forgery or with having fraudulently procured the money thereon from Thompson is Thompson's own evidence that Craven delivered him the copy of the bill of information with the copy of the entry of the nolle prosequi on it, and received $50 from him, pursuant to an agreement with Thompson to persuade the district attorney to enter the nolle prosequi, and to furnish proof that he did enter it. *Page 382 
Thompson's evidence is supported, to some extent, by the circumstance that a deputy clerk delivered the certified copy of the bill of information to Craven, without the indorsement of the nolle prosequi on it; by the circumstance that the next seen of the copy was when Thompson showed it to an assistant district attorney, with a copy of the entry of the nolle prosequi thereon; by the circumstance that the language of the entry is in the customary legal form, indicating that some one familiar with records must have made the entry, and by the circumstance, if not explained, that Craven departed from New Orleans about the time of the alleged forgery, and has not been seen since.
Were we justified in giving weight to Thompson's evidence, we should feel constrained to affirm the commissioner's report by disbarring Craven, but, in our view, Thompson's reputation for truth and veracity is shown to be such that his evidence, standing alone, is not entitled to weight, nor are the corroborating circumstances surrounding it such as to justify us in accepting it as true. It is shown by some eight or ten reputable witnesses that Thompson's reputation for truth and veracity is bad, some of these witnesses testifying affirmatively that they would not believe him under oath. Such was his reputation at college and in the outside world.
The circumstances tending to support Thompson's evidence are so far explained by other evidence, or are so weak, as not to justify us in acting upon them. It does not follow that, because Thompson showed the copy with the false entry to the assistant district attorney, he received it from Craven with *Page 383 
that entry in it. It is possible that Thompson procured a form somewhere and made the entry himself, and that he showed the forged copy to the assistant district attorney in the hopes of making it to the interest of the state to nolle prosequi the case against him, in order more successfully to prosecute one against Craven, it appearing that the prosecuting witness in the case against Thompson was willing to have the nolle prosequi entered to avoid the publicity of the trial. The fact that Craven left New Orleans for parts unknown, on or about the day of the alleged forgery, adds nothing to the weight of Thompson's evidence or to the weight of the case of the disbarment committee.
Flight may be explained always. Here it is sufficiently explained, for it appears that Craven had failed to pay his divorced wife alimony, for which she caused him to be brought before the civil district court for contempt. There he was sentenced to jail for contempt of court. Just before his release from prison, which was before the present cause of action arose, he notified his wife by telephone of his intention to leave for some point, not disclosed. The present cause of action arose quite soon after his release. In these circumstances, the court is unable to say whether Craven's leaving was prompted by a conscious knowledge of guilt, because of the forgery, or, being innocent of the forgery, his leaving was due to family troubles, in that he felt that his home life had been destroyed, and that he had been humiliated and his professional career injuriously affected by his imprisonment for failure to pay alimony. *Page 384 
Some men, and especially those practicing criminal law, by reason of the nature of their occupations, are exposed to the making of false accusations against them by unscrupulous men, and courts should exercise caution in deciding cases arising out of such accusations. The greater is the care to be exercised when it is made to appear that the determination of the truth of the accusation is largely dependent upon the evidence of witnesses of doubtful veracity.
It is our opinion that the record in the present case does not establish with legal certainty the charge preferred against Craven.
For these reasons, the exception to the report of the commissioner is sustained, and accordingly the demands of the committee on disbarment are rejected and disallowed.